IN THE CIRCUIT COURT OF THE
FIRST JUDICIAL CIRCUIT, IN AND
FOR OKALOOSA COUNTY, FLORIDA

**BRANDON MUNDT,**

    Plaintiff,

v.

**ERIC ADEN in his official capacity as SHERIFF OKALOOSA COUNTY,**

    Defendant.

_____/

CASE NO.: 23-CA- 2023 CA 004412 F
FLA BAR NO.: 0739685

## COMPLAINT

Plaintiff, BRANDON MUNDT, hereby sues Defendant, ERIC ADEN in his official capacity as SHERIFF OKALOOSA COUNTY, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under §440.205, Florida Statutes, 42 U.S.C. §12101 et seq., and the Family and Medical Leave Act (FMLA) of 1993, codified at 29 U.S.C. §§2612, 2624.

2. This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, BRANDON MUNDT, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to his disability and he was retaliated against after reporting Defendant's unlawful employment practices. Plaintiff is a member of a protected class for taking protected leave under the FMLA and has been retaliated against thereafter.

4. At all times pertinent hereto, Defendant, ERIC ADEN in his official capacity as SHERIFF OKALOOSA COUNTY, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began his employment with Defendant in February 2012 when he worked as a Patrol Deputy and Field Training Officer until July 2016 when Plaintiff resigned to relocate to assist his family. He was reemployed with Defendant on or about on March 12, 2019 when he began working for Defendant in the same position. He was promoted to Defendant's Homeland Security Department on June 19, 2021, and then on June 1, 2022 Plaintiff transferred to the Child Crimes Unit in the Criminal Investigations Section where he held the position of Investigator at the time of his wrongful termination on February 22, 2023.

7. Despite his stellar work performance during his employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of his disability, for taking FMLA leave, and because he reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Investigations Bureau Commander Major Shannon Tait, Risk Analyst Doris James, Human Resources Manager Rashanna Prescott, Sheriff Eric Aden, and Captain Matt Abbott.

9. Plaintiff was a loyal and dedicated employee. During his employment, he received Life Saving Awards in 2015, 2016, and 2019, and was awarded Deputy of the year in 2020. Plaintiff has never been reprimanded or suspended.

10. Plaintiff has been treated less favorably than coworkers outside of his protected classes, including but not limited to Investigator Michael Hogan, Deputy Sheriff Jennifer Batalli and Investigator Wesley Barnhill regarding leave, short term disability leave, light duty and FMLA.

11. Batalli was allowed to take off work due to an injury and she was not forced to resign until she had been out for 6 months.

12. Hogan also had surgery and was allowed to return to work for light duty work despite his not being fully cleared for all his work as an Investigator. However, Plaintiff was not offered light duty work after his surgery and was terminated.

13. Barnhill was able to be out of work for three months due to an injury similar to Plaintiff's and he was not terminated. However, Plaintiff was terminated after being out a little over two months.

14. In 2015, Plaintiff was involved in a car accident while on duty. Plaintiff went to the emergency room due to back and neck pain, was treated and returned to work.

15. After June 1, 2022, when Plaintiff transferred to the Child Crimes Unit in the Criminal Investigations Section, he began experiencing major pain in his back and was having problems moving around.

16. In June 2022, Plaintiff had an MRI which showed trauma to his spine which had degenerated and was referred to a surgeon. He was thus diagnosed with a serious medical/disabling condition and he told Defendant of his condition at that time.

17. In June 2022, when Plaintiff returned to work, he was sent home and was not cleared to return to work until he was evaluated.

18. In July, 2022, Plaintiff was evaluated and cleared to return to work.

19. After his return to work in July 2022, Plaintiff was forced to go on FMLA leave without his consent due to his condition. Plaintiff was able to perform the essential functions of his position at that time with and/or without accommodations. Plaintiff was on forced FMLA leave for three weeks and had to be evaluated prior to returning to work.

20. In August 2022, Plaintiff returned to work.

21. In September 2022, Plaintiff saw the doctor and scheduled surgery for December 1, 2022, a laminectomy of his L4 and L%, of which he made Defendant aware. Plaintiff expressed concerns to Sheriff Aden, Undersheriff Charlie Nix, Investigations Bureau Commander Major Shannon Tait, and Legal Counsel Marsha Weaver, esq., about his job security and was told he had nothing to worry about.

22. In Fall 2022, Tait asked Plaintiff why he had not tested for a Sergeant position. Plaintiff replied that he was waiting until after his recovery from surgery to apply for a Sergeant position.

23. Around that same time, Plaintiff was told by Lieutenant Daniel Genrich that he may be able to return to work for light duty before being medically cleared to return to full duty.

24. Just prior to Plaintiff's December 2022 surgery, Plaintiff reached out to Risk Analyst Doris James, who works in Human Resources/Risk Management for the Defendant, to open a workers compensation claim because the issues Plaintiff was experiencing were the result of an on duty car accident. Doris advised Plaintiff that the claim had been denied, but never provided Plaintiff any paperwork stating such.

25. On December 1, 2022, Plaintiff had surgery due to his serious medical/disabling condition. Plaintiff started short term disability leave with pay which was set to end on in January or February, 2023. Defendant's policy allows for 26 weeks of short-term disability leave with pay for a non-work-related injury.

26. As a result of complications from the initial surgery in December, 2022, Plaintiff had to have a second surgery on December 14, 2022. Originally. Plaintiff was only going to be out 6-8 weeks to recover but after the December 14, 2022, surgery Plaintiff's doctor, Brandon Cook, MD., gave him a return-to-work date of March 14, 2023. Plaintiff reported his new return to work date to Genrich. Genrich, who stated he (Genrich) would notify the Defendant about Plaintiff's return to work date.

27. On January 4, 2023, Doris James was provided with a doctor's note with a return-to-work date of March 14, 2023.

28. On January 5, 2023, Tait messaged Plaintiff on Facebook and asked if Plaintiff had thought about working dispatch while recovering from surgery and then returning to work as a Deputy Sheriff, after he was cleared for duty by his doctor. This change in position would have been a demotion for Plaintiff. Tait told Plaintiff that he would be offered the dispatch position on his 180th day out on leave in lieu of termination. Tait told Plaintiff he would have to resign from his current position and apply for the civilian position of dispatch. Tait was citing to Defendant's policy giving employees 6 months off due to illness or injury before they would face termination.

29. On January 28, 2023, Plaintiff's FMLA expired since he had been forced to use FMLA in July, 2022 by Defendant.

30. In early February 2023, Genrich asked Plaintiff to submit an extension of leave time. Plaintiff complied and Plaintiff's request was denied.

31. On February 14, 2023, Tait and Abbott called Plaintiff and told him that March 14, 2023, was his "hard return date" because Cook's letter had said Plaintiff "will likely return on March 14, 2023." Tait and Abbott told Plaintiff if he could not return on March 14, 2023, Plaintiff would need to resign and apply for a civilian position in dispatch.

32. On February 17, 2023, three days after the call from Tait and Abbot where they told Plaintiff he had a hard return date of March 14, 2023, Tait called Plaintiff and rescinded that agreement. Tait called Plaintiff with an ultimatum and told Plaintiff he could either accept a non-sworn position, which was a demotion, or resign, and that Plaintiff had until February 20, 2023, to make his decision. Tait told Plaintiff if Plaintiff failed to accept the demotion or to resign he would face termination.

33. On February 18, 2023, Plaintiff emailed James and Tait and requested an extension of leave through the Americans with Disabilities Act (ADA) through March 14, 2023, to remain employed in his current position as an Investigator. Plaintiff also asked Tait why Defendant had changed their mind and was not letting him return to work on March 14, 2023, such as Plaintiff, Tait and James had previously discussed. Tait responded and simply said Plaintiff was out of time.

34. On February 20, 2023, Tait emailed Plaintiff and again offered Plaintiff the option of accepting a non-sworn position, a demotion, in lieu of termination.

35. Plaintiff called Tait and asked what would happen if he failed to accept the non-sworn position, a demotion, or to resign. Tait answered Plaintiff and said if he failed to accept the non-sworn position, a demotion, or to resign he would face termination. Plaintiff told Tait he would not accept a non-sworn position, a demotion, and would not resign. Tait told Plaintiff "You don't want to do that Brandon (Plaintiff), we will terminate you." Plaintiff told Tait he did not agree with

what they were doing and that it was not right. Tait interrupted Plaintiff and began screaming at Plaintiff and then hung up on him.

36. On February 22, 2023, Plaintiff was wrongfully terminated via letter from Human Resources Manager Rashanna Prescott under the guise of Plaintiff exhausting all of his sick and annual leave. However, Plaintiff still had approved short-term disability leave until March 13, 2023.

37. Plaintiff was treated less favorably than co-workers outside of his protected classes. Batalli was allowed to take off work due to an injury and she was not forced to resign until she had been out for 6 months. Barnhill had an injury similar to Plaintiff's and was allowed to be out of work for three months while Plaintiff was terminated after two months of being out. Plaintiff was terminated due to his serious medical/disabling condition, in retaliation for his complaints about disparate treatment, and in retaliation against him for taking FMLA leave.

38. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## DISABILITY DISCRIMINATION

39. Paragraphs 1 through 38 are realleged and incorporated herein by reference.

40. This is an action against Defendant for disability discrimination.

41. Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability. During the course of Plaintiff's employment with Defendant, he was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

42. Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, as well as its failure to engage in the interactive process with Plaintiff, which adversely

7

affected the terms and conditions of Plaintiff's employment with Defendant.  Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

43. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

44. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination.

45. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment under the laws enumerated herein.

46. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT II
## RETALIATION – Chapter 760

47. Paragraphs 1 through 38 are realleged and incorporated herein by reference.

48. Defendant is an employer as that term is used under the applicable statutes referenced above.

49. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting him.

50. The foregoing unlawful actions by Defendant were purposeful.

51. Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above.

52. Plaintiff is a member of a protected class because he reported or objected to unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

53. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive relief.

## COUNT III
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

54. Paragraphs 1 through 38 are re-alleged and are incorporated herein by reference.

55. This is an action against Defendant for retaliating against Plaintiff due to Plaintiff's use of protected leave time as set forth more fully above. This is an interference and retaliation claim.

56. After being forced to take leave for a serious health conditions, Defendant harassed Plaintiff and took adverse personnel actions against Plaintiff for using leave that it forced him to take and then for time that he needed to take.

57. Plaintiff was denied rights and benefits conferred by the FMLA and was terminated after taking protected leave.

58. Defendant's violations of the FMLA were willful.

59. As a direct and proximate result of Defendants willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of employment, as well as the security and peace of mind it provided. Plaintiff has incurred damages for lost wages, and other damages attendant with the loss of his job. These damages have occurred in the past, are occurring at present and will continue in the future.

## COUNT IV
## WORKER'S COMPENSATION RETALIATION

60. Paragraphs 1 through 37 are re-alleged and incorporated herein by reference.

61. This is an action against Defendant for retaliation under §440.205, Florida Statutes. At all times pertinent hereto, Defendant has been subject to Chapter 440, Florida Statutes.

62. Plaintiff was employed with Defendant when he was injured on the job. Plaintiff sought compensation and/or benefits including without limitation medical care under Chapter 440, Florida Statutes and was retaliated against for making or attempting to make such a claim.

63. Defendant retaliated against Plaintiff because he was injured on the job and had a valid claim for compensation and benefits under Chapter 440.

64. Defendant's actions set forth above violate §440.205, Florida Statutes, which prohibits an employer, such as Defendant, from coercing, retaliating against or otherwise adversely affecting an employee who attempts to or does claim entitlement to workers' compensation benefits under the laws of the State of Florida.

65. As a direct and proximate cause of the actions set forth in part above, Plaintiff has been damaged, which damages include but are not limited to lost wages and other tangible and

intangible damages and every other kind of damage allowed by law. Plaintiff has also suffered emotional pain and suffering damages and other intangible damages that continue today. Plaintiff is also entitled to injunctive/equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 26th day of December 2023.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF

12